UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:10-CV-00031-TBR


GARY S. VANDER BOEGH                                          Plaintiff

v.

ENERGYSOLUTIONS, INC.                                        Defendant


**MEMORANDUM OPINION**

This matter is before the Court upon Defendant EnergySolutions, Inc.'s "Motion for Summary Judgment on Plaintiff's Lack of Statutory Standing." (Docket No. 78.) Plaintiff Gary Vander Boegh has responded, (Docket No. 91), and Defendant has replied, (Docket No. 92). Also pending before the Court is Plaintiff's "Motion to Modify Schedule and for Leave to Conduct Discovery," (Docket No. 82), to which Defendant has responded, (Docket No. 88), and Plaintiff has replied, (Docket No. 93). For the reasons that follow, the Court will GRANT Defendant's Motion and enter summary judgment in its favor.

BACKGROUND

The factual background of this action was set forth in detail in the Court's prior Memorandum Opinion of May 3, 2012, (Docket No. 52, at 1-7), and again in the Sixth Circuit's Opinion of August 14, 2013, (Docket No. 74, at 1-9). As such, and in the interest of brevity, here the Court will limit its recitation of the facts, which appear to be undisputed, to only those pertinent to Defendant's instant Motion.

Plaintiff was employed by WESKEM beginning in 2000 as the landfill manager at the Paducah Gaseous Diffusion Plant (PGDP). On April 23, 2006, WESKEM ceased activities at the PGDP, and Plaintiff's employment with WESKEM was terminated by WESKEM. At that time, Defendant took over the waste management duties previously performed by WESKEM. Plaintiff was never employed, managed, paid, or supervised by Defendant; no contractual relationship existed between Plaintiff and Defendant; and Defendant took no affirmative action indicating it intended to employ Plaintiff.

Plaintiff filed an employment discrimination complaint with the Department of Labor on April 18, 2006. He subsequently removed the action to this Court pursuant to 42 U.S.C. § 5851(b)(4) in February 2010. In his Complaint, Plaintiff alleges retaliation in violation of the Energy Reorganization Act (Count I), the False Claims Act (Count II), and various environmental statutes[1] (Count III). In essence, Plaintiff asserts in Counts I and III that Defendant did not hire him when it began operations at the PGDP in April 2006 because he previously had reported several environmental violations to a former employer and, in Count II, that Defendant did not hire him because years prior to his application with Defendant he had engaged in activity protected by the False Claims Act.

Defendant previously moved for summary judgment, contending that Plaintiff failed to establish a prima facie case for retaliation and that Plaintiff lacked statutory standing. In granting Defendant summary judgment, the Court concluded that Plaintiff failed to establish a prima facie case of retaliation but did not reach the issue of whether

---

[1] Reincorporating the same facts upon which he bases his claim in Count I, in Count III Plaintiff alleges retaliation under the whistleblower protection provisions of the following environmental statutes: the Solid Waste Disposal Act, 42 U.S.C. § 6971; the Clean Water Act, 33 U.S.C. § 1367; the Safe Drinking Water Act, 42 U.S.C. § 300j-9(i)(2)(B)(ii); and the Toxic Substances Control Act, 15 U.S.C. § 2622.

Plaintiff lacked statutory standing. Plaintiff appealed, and the Sixth Circuit, in a 2-1 decision, reversed this Court's grant of summary judgment on the limited factual issue of whether Defendant had knowledge of Plaintiff's protected activity. The majority opinion did not undertake any analysis in regard to the issue of standing under the False Claims Act, and declined to consider whether Plaintiff has statutory standing under the Energy Reorganization Act. (Docket No. 74, at 10 n.3, 17-18.) The Sixth Circuit directed this Court on remand to address specifically the issue of Plaintiff's statutory standing, which the Court will proceed to do below. (*See* Docket No. 74, at 17-18.)

STANDARD

Summary judgment is proper when, in viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). A plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

DISCUSSION

Defendant argues that Plaintiff lacks statutory standing to bring any of his retaliation claims because all of the pertinent statutes require an employment relationship to confer standing. Where such a relationship is lacking, Defendant argues, Plaintiff's claims fail as a matter of law. As noted above, Plaintiff concedes that no employment relationship existed between him and Defendant. Plaintiff insists, however, that the whistleblower protection provisions of the relevant statutes should be read to cover not only employees but also applicants for employment. Thus, the question before the Court is a matter of statutory interpretation and whether Plaintiff has statutory standing to maintain his retaliation claims.

I. **Plaintiff Lacks Standing Under the Energy Reorganization Act**

Under the Energy Reorganization Act (ERA), "[n]o employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee [engaged in activity protected by the statute]." 42 U.S.C. § 5851(a)(1); *McNeill v. U.S. Dept. of Labor*, 243 F. App'x 93, 97 (6th Cir. 2007). The ERA is "a remedial statute intended to shield employees from adverse action taken by their employers in response to employees' complaints of safety violations." *Conn. Light & Power Co. v. Sec'y of U.S. Dep't of Labor*, 85 F.3d 89, 93 (2d Cir. 1996). "The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984)).

Although the ERA provides a list of examples of entities that qualify as "employers," neither it nor the relevant regulations define the term "employee." *See* 42 U.S.C. § 5851(a)(2)(A)–(G); 29 C.F.R. § 24.101. The Supreme Court holds that it is a "'well established' principle" that "when Congress has used the term 'employee' without defining it, [courts should presume] that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)). The Supreme Court summarizes this "common-law test for determining who qualifies as an 'employee'" as: "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Id.* (quoting *Reid*, 490 U.S. at 751-52). The Sixth Circuit, in applying *Darden*, has held that a complainant must be a "hired party" in order to bring an ERA retaliation claim. *Demski v. U.S. Dep't of Labor*, 419 F.3d 488, 491-92 (6th Cir. 2005); *accord O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (holding that a prerequisite to considering whether an individual is an employee under *Darden*'s common-law agency analysis: "is that the individual have been hired in the first instance. That is, only where a 'hire' has occurred should the common-law agency analysis be undertaken."). Furthermore, the Sixth Circuit has rejected the notion that courts should construe the term "employee" broadly, reasoning that if Congress believes that a broad construction of that term is required, "Congress may always expand the definition of employee under the ERA beyond the common law definition by amending the statute." *Demski*, 419 F.3d at 492.

In this case, the parties agree that Plaintiff was never hired by Defendant. (Indeed, Plaintiff brought suit because he was not hired by Defendant.)  It is undisputed that Defendant never employed, managed, or supervised Plaintiff.  It also is undisputed that Plaintiff never received any salary, wages, or other compensation from Defendant. *See O'Connor*, 126 F.3d at 115-16 ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because although 'compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, . . . it is an essential condition to the existence of an employer-employee relationship.'" (quoting *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 1990)). Additionally, it is undisputed that no contractual relationship ever existed between Plaintiff and Defendant.  *Cf. Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 354 (6th Cir. 2011) (applying *Darden* and *Demski* to conclude that each volunteer-firefighter claimant was a "hired party" where each had a contractual relationship with the fire department to provide services to the department in exchange for benefits received from the department).  Thus, because Defendant never "hired" Plaintiff as that term is understood through the lens of *Darden* and *Demski*, Plaintiff is not an "employee" within the meaning of the ERA.  Absent explicit statutory language, the Court sees no reason to extend the ERA's protection to an applicant for employment, as Plaintiff urges. Accordingly, the Court finds that Plaintiff lacks statutory standing to assert a retaliation claim under § 5851, and, therefore, Defendant is entitled to summary judgment relative to Count I.

**II.      Plaintiff Lacks Standing Under the False Claims Act**

The False Claims Act (FCA) limits relief from retaliatory actions to "employee[s], contractor[s], or agent[s]."  31 U.S.C. § 3730(h)(1).  Plaintiff concedes that "there is apparently not yet any binding precedent from the Sixth Circuit or United States Supreme Court on th[e] exact question of the scope of protection afforded by 31 U.S.C. § 3730(h)."  (Docket No. 91, at 23.)  However, both this Court and other district courts around the country have construed § 3730(h) to require some sort of employment relationship in order to maintain an FCA retaliation claim.

In a recent decision, this Court granted a defendant's motion to dismiss an FCA retaliation claim, reasoning that because the defendant was not the plaintiff's employer, it could not be liable under § 3730(h).  *Thompson v. Quorum Health Res., LLC*, 2007 WL 2815972 (W.D. Ky. Sept. 27, 2007).  A number of other courts have similarly construed the FCA's antiretaliation provisions.  For example, in *Vessell v. DPA Assocs. of Charleston, Inc.*, the United States Court of Appeals for the Fourth Circuit applied the common-law agency test articulated in *Darden* to find that the plaintiff was not the defendant's employee.  148 F.3d 407 (4th Cir. 1998)  As such, the Fourth Circuit concluded that the plaintiff could not recover under § 3730 because "[t]he plain language of the statute includes only employees."  *Id.* at 411-13.  In *Mruz v. Caring, Inc.*, the United States District Court for the District of New Jersey, in a detailed decision, dismissed a plaintiff's FCA claim, concluding that "the hallmark of liability under section 3730(h) is an 'employment relationship.'"  991 F. Supp. 701, 709 (D.N.J. 1998).  There, the court began by looking to the statutory language of § 3730(h), explaining: "Everything about the plain language of section 3730(h) reflects a legislative intent to

operate exclusively in the area of the 'employment relationship.'" *Id.* at 709. The court buttressed its conclusion by looking to the relief authorized by the statute, noting that "the primary relief mentioned in the statute can logically be granted only by someone who has or had an employment relationship with a section 3730(h) plaintiff, *i.e.*, relief is likely to consist of reinstatement or the payment of back wages or interest thereon." *Id.* More recently, the United States. District Court for the District of Columbia reached a like conclusion in *U.S. ex rel. Morgan v. Sci. Applications Int'l Co.*, 604 F. Supp. 2d 245 (D.D.C. 2009). Reasoning that "[o]nly a whistleblower's employer . . . is subject to liability for retaliation or discrimination under section 3730(h)," the court dismissed the plaintiff's FCA retaliation claim because "there [wa]s no indication anywhere in the Complaint that [the defendant] and [the plaintiff] ever had an employer-employee relationship." *Id.* at 250.

In 2009, Congress amended § 3730(h) to add relief for "contractors" and "agents" in addition to "employees." *See* Fraud Enforcement and Recovery Act of 2009, Pub. L 111-21, 123 Stat. 1617, 1624-25. While these amendments extended the protections of the FCA to some degree, the language of the amended § 3730(h)(1) demonstrates that Congress's intent remained to limit standing to individuals with some type of employment relationship. The legislative history relative to 2009 amendment supports this conclusion. The Senate Judiciary Committee's report on the 2009 amendments referenced the need to make statutory changes to correct what Congress viewed as an overly narrow view taken by some courts regarding the definition of the term "employee" in § 3730(h). S. REP. 110-507, 2008 WL 4415147, at *26 (2008). That report stated that "by simply including the terms 'government contractor, or agent' in addition to the term

'employee,'" the statute could "assist individuals who are not technically employees within the typical employer-employee relationship, but nonetheless have a contractual or agent relationship with an employer." *Id.*, 2008 WL 4415147, at \*26-27. Congressman Howard Berman (D-CA), the House sponsor of the FCA amendments, echoed those notions in a speech to the House of Representatives where he stated that the purpose of the amendments was to make clear that § 3730(h) "covers . . . retaliation against contractors and agents of the discriminating party who have been denied relief by some courts because they are not technically 'employees.'" 155 CONG. REC. 12694, 12699, 2009 WL 1544226 (2009) (statement of Rep. Howard Berman). Congressman Berman continued, stating that the amendments were needed in order "to protect persons who seek to stop violations of the [FCA] regardless whether the person is a salaried *employee*, an *employee* hired as an independent contractor, or an *employee* hired in an agency relationship." *Id.* (emphases added). Thus, the legislative history relative to the 2009 amendments undoubtedly shows that despite expanding § 3730(h)'s protection, Congress nonetheless intended to limit standing under that provision to individuals having some type of employment relationship with the retaliating employer.

A decision by the United States District Court for the District of South Carolina since the enactment of the 2009 amendments (and which has since been affirmed by the Fourth Circuit) confirms the conclusion that a defendant cannot be liable under § 3730(h) where no personal employment, contractual, or agency relationship exists between it and the plaintiff. *U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, 2012 WL 6892716 (D.S.C. May 3, 2012), *aff'd* 475 F. App'x 851 (4th Cir. 2012) (per curiam). In *Abou-Hussein*, the court succinctly explained:

Plaintiff argues that 2009 amendments to the False Claims Act allowed for the first time actions against non-employers. Plaintiff misapprehends the changes made by the 2009 amendment to § 3730(h). In the years preceding the 2009 amendments, a number of courts held that § 3730(h), which referred to "any employee", did not provide protection for persons in employment type relationships but who were technically independent contractors or agents. . . .

The 2009 amendments sought to correct what Congress viewed as the unduly narrow interpretation that the courts had given to the term "employee." [Section] 3730(h) was changed from prohibiting retaliation against "any employee" to "any employee, contractor or agent." The statute continued to prohibit any discrimination because of lawful acts in furtherance of the False Claims Act "in the terms and conditions of employment." . . .

Plaintiff does not allege in the Amended Complaint that he had any personal employment, contractual or agency relationship with [the defendants]. . . . These [d]efendants fall well outside the scope of the 2009 amendment to § 3730(h) and are not proper party defendants in a retaliation claim under the False Claims Act.

*Id.* at \*3 (internal citations omitted).

As noted above, Plaintiff concedes that he was never employed by Defendant and does not claim that he was either a contractor or agent for Defendant. In view of the 2009 amendments to the FCA and the legislative history relative to those amendments, the Court sees no reason to extend the FCA's protection to an applicant for employment in the absence of explicit statutory language to that effect. If Congress believed that the term "employee" should be read so broadly as to include "applicants for employment," Congress could have expanded the definition as such when it enacted the 2009 amendments. *See Demski*, 419 F.3d at 492. Accordingly, because there is no genuine issue of material fact whether Plaintiff ever had an employment, contractual, or agency relationship with Defendant, the Court finds that Plaintiff lacks statutory standing to

assert a retaliation claim under the FCA. Defendant thus is entitled to summary judgment relative to Count II.

**III.     Plaintiff Lacks Standing To Maintain His Remaining Statutory Claims**

In Count III, Plaintiff alleges retaliation under the whistleblower-protection provisions of a number of environmental statutes, including: the Solid Waste Disposal Act (SWDA), the Clean Water Act (CWA), the Safe Drinking Water Act (SDWA), and the Toxic Substances Control Act (TSCA).  As is the case with Plaintiff's claims under the ERA and FCA, standing to assert a claim under these statutes presupposes the existence of an employment relationship.  The SWDA reads, in relevant part:

> No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any *employee* . . . by reason of the fact that such *employee* . . . has filed, instituted, or caused to be filed or instituted any proceeding under this chapter or under any applicable implementation plan, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter or of any applicable implementation plan.

42 U.S.C. § 6971 (emphases added).  By its plain language, the SWDA protects employees from retaliation by their employers.  The CWA, in almost identical fashion, provides:

> No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any *employee* . . . by reason of the fact that such *employee* . . . has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

33 U.S.C. § 1367 (emphases added).  Again, by its plain language, the CWA protects employees from discrimination or retaliation by their employers.  The SDWA, in

language identical to the ERA, states that "[n]o *employer* may discharge any *employee* or otherwise discriminate against any *employee* with respect to his compensation, terms, conditions, or privileges of employment because the *employee* [engaged in activity protected by the statute]." 42 U.S.C. § 300j-9(i) (emphases added). For the same reasons discussed *supra* Part I relative to the ERA, Plaintiff is not an "employee" within the meaning of the SDWA. And finally, the TSCA, in language almost indistinguishable from the SDWA and ERA, provides that "[n]o *employer* may discharge any *employee* or otherwise discriminate against any *employee* with respect to the *employee's* compensation, terms, conditions, or privileges of employment because the *employee* [has engaged in certain protected activity]." 15 U.S.C. § 2622(a) (emphases added).

As with Plaintiff's retaliation claims under the ERA and FCA, standing under these statutes requires the existence of an employment relationship. Because no such relationship ever existed between Plaintiff and Defendant, Plaintiff lacks statutory standing to assert a claim under the SWDA, CWA, SDWA, or TSCA against Defendant. Thus, Defendant is entitled to summary judgment relative to Count III.

## IV.    Plaintiff's Alternate Theory Need Not Be Considered.

Of final note, Plaintiff proposes the alternate theory that "because of his grandfathered status and right of first refusal," he had the status as an employee of Defendant. (Docket No. 91, at 26.) Plaintiff reasons that "[i]n this scenario, [he] would have standing even under Defendant's stingy reading of the FCA, ERA, and federal environmental statutes['] employee protection provisions." (Docket No. 91, at 26.) This argument has been considered and rejected both by this Court, (*see* Docket No. 52, at 25),

and by the Sixth Circuit, (*see* Docket No. 74, at 15-16, 19). Consequently, it need not be addressed again here.

CONCLUSION

Therefore, having considered the parties' respective arguments and being otherwise sufficiently advised, for the foregoing reasons, Defendant EnergySolutions, Inc.'s "Motion for Summary Judgment on Plaintiff's Lack of Statutory Standing," (Docket No. 78), will be GRANTED, and Plaintiff Gary Vander Boegh's claims against Defendant will be DISMISSED. Because the grant of summary judgment in Defendant's favor disposes of this action, Plaintiff's "Motion to Modify Schedule and for Leave to Conduct Discovery," (Docket No. 82), will be DENIED as moot.

An appropriate Order will issue concurrently with this Opinion.

Date:

cc:     Counsel